AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.   25-mj-5525 |
| Google, Inc. | ) | |
| l78630613@gmail.com | ) | |
| ("Subject Account") | ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____ Northern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

❑ property designed for use, intended for use, or used in committing a crime;

❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Secs. 841(a)(1) and 846 | Conspiracy to Distribute Methamphetamine |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

❑ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Alexander Doyle, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date: _____ October 9, 2025 _____

_____
*Judge's signature*

City and state:  San Diego, California          Hon. Steve B. Chu, United States Magistrate Judge
*Printed name and title*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Attachment A

### *Items to be Searched*

Google, Inc. is an electronic communication service provider whose primary computer information systems and other electronic communications and storage systems, records, and data are located at 1600 Amphitheater Parkway, Mountain View, California 94043.

Google, Inc. hosts the following electronic communication accounts that are the subject of this search warrant and application:

l78630613@gmail.com ("**Subject Account**") [5]

---

[5] The first letter of the **Subject Account** is a lowercase "L".

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Attachment B

### I.    Service of Warrant

The officer executing the warrant shall permit Google, Inc. (the "ISP"), as custodian of the computer files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

### II.    Items subject to seizure from the ISP

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, Google is required to disclose to the government for each account or identifier listed in Attachment A the following information from **September 24, 2024, to January 25, 2025**, unless otherwise indicated:

a.    All business records and subscriber information, in any form kept, pertaining to the Account, including:

   1.    Names (including subscriber names, user names, and screen names);

   2.    Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);

   3.    Telephone numbers, including SMS recovery and alternate sign-in numbers;

   4.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;

   5.    Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS

recovery numbers, Google Voice numbers, and alternate sign-in numbers

6. Length of service (including start date and creation IP) and types of service utilized;

7. Means and source of payment (including any credit card or bank account number); and

8. Change history.

b. All device information associated with the Account, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

c. Records of user activity for each connection made to or from the Account(s), including, for all Google services, the date, time, length, and method of connection, data transfer volume, user names, source and destination IP address, name of accessed Google service, and all activity logs

d. The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, and deleted emails; attachments; the source and destination addresses associated with each email; the size, length, and timestamp of each email; and true and accurate header information including the actual IP addresses of the sender and recipients of the emails;

e. Any records pertaining to the user's contacts, including: address books; contact lists; social network links; groups, including Google Groups to which the user belongs or communicates with; user settings; and all associated logs and change history;

f. Any records pertaining to the user's calendar(s), including: Google Calendar events; Google Tasks; reminders; appointments; invites; and goals; the sender

and recipients of any event invitation, reminder, appointment, or task; user settings; and all associated logs and change history;

g.    The contents of all text, audio, and video messages associated with the account, including Chat, Duo, Hangouts, Meet, and Messages (including SMS, MMS, and RCS), in any format and however initially transmitted, including, but not limited to: stored, deleted, and draft messages, including attachments and links; the source and destination addresses associated with each communication, including IP addresses; the size, length, and timestamp of each communication; user settings; and all associated logs, including access logs and change history;

h.    The contents of all records associated with the account in Google Drive (including Docs, Sheets, Forms, and Slides) and Google Keep, including: files, folders, media, notes and note titles, lists, applications, and other data uploaded, created, stored, or shared with the account including drafts and deleted records; third-party application data and backups; SMS data and device backups; the creation and change history of each record; accounts with access to or which previously accessed each record; any location, device, other Google service (such as Google Classroom or Google Group), or third-party application associated with each record; and all associated logs, including access logs and IP addresses, of each record;

i.    The contents of all media associated with the account in Google Photos, including: photos, GIFs, videos, animations, collages, icons, or other data uploaded, created, stored, or shared with the account, including drafts and deleted records; accounts with access to or which previously accessed each record; any location, device, or third-party application data associated with each record; and all associated logs of each record, including the creation and change history, access logs, and IP addresses;

j.   All maps data associated with the account, including Google Maps and Google Trips, including: all saved, starred, and privately labeled locations; search history; routes begun; routes completed; mode of transit used for directions; My Maps data; accounts and identifiers receiving or sending Location Sharing information to the account; changes and edits to public places; and all associated logs, including IP addresses, location data, and timestamps, and change history;

k.   All Location History and Web & App Activity indicating the location between **September 24, 2024, to January 25, 2025** at which the account was active, including the source of the data, date and time, latitude and longitude, estimated accuracy, device and platform, inferences drawn from sensor data (such as whether a user was at rest, walking, biking, or in a car), and associated logs and user settings, including Timeline access logs and change and deletion history;

l.   All payment and transaction data associated with the account, such as Google Pay and Google Wallet, including: records of purchases, money transfers, and all other transactions; address books; stored credit; gift and loyalty cards; associated payment cards, including any credit card or bank account number, PIN, associated bank, and other numbers; and all associated access and transaction logs, including IP address, time stamp, location data, and change history;

m.   All Internet search and browsing history, and application usage history, including Web & App Activity, Voice & Audio History, Google Assistant, and Google Home, including: search queries and clicks, including transcribed or recorded voice queries and Google Assistant responses; browsing history, including application usage; bookmarks; passwords; autofill information; alerts, subscriptions, and other automated searches, including associated

21

notifications and creation dates; user settings; and all associated logs and change history;

n.   All activity relating to Google Play, including: downloaded, installed, purchased, used, and deleted applications; details of the associated device and Android ID for each application, medium, or file; payment transactions; user settings; and all associated logs, including IP addresses, timestamps, and change history;

o.   All Google Voice records associated with the account, including: forwarding and other associated telephone numbers, connection records; call detail records; SMS and MMS messages, including draft and deleted messages; voicemails, including deleted voicemails; user settings; and all associated logs, including access logs, IP addresses, location data, timestamps, and change history.

## III.   Evidence to be Seized by the Government

The search of the data supplied by the ISP pursuant to this warrant will be conducted by Homeland Security Investigations as provided in the "Procedures For Electronically Stored Information" of the affidavit submitted in support of this search warrant and will be limited to the period of **September 24, 2024 to January 25, 2025**, for location data and all other content, and the seizure of communications in any form, writings, images, records, videos, attachments, location data, or photographs:

a)   Tending to discuss or establish a conspiracy to distribute methamphetamine in violation violations of 21 United States Code Sections 841(a)(1) and 846;

b)   Tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of

this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, HSI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

All of the above constituting evidence of a violation of 21 United States Code Sections 841(a)(1) and 846.

**AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEARCH WARRANTS**

I, Alexander Doyle, being duly sworn, declare and state:

**INTRODUCTION**

1.    I make this affidavit in support of applications for a search warrant for information associated with the following Google account, the "**Subject Account**" that is stored at the premises controlled by Google, Inc. ("Google"), a provider of electronic communication and remote computing services, headquartered at 1600 Amphitheatre Parkway, Mountain View, California 94043. The information to be searched is further described in the Attachment A for the corresponding account:

"l78630613@gmail.com",[2] a Google Account utilized by Roberto LOMELI Saavedra ("**Subject Account**");

2.    This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), 2703(c)(1)(A) and 2703(d) to require Google to disclose to the Government copies of the information (including the content of communications and historical location data) described in Section II of the corresponding Attachment B, as summarized below. Upon receipt of the information described in Section II of the relevant Attachment B, law enforcement agents and/or individuals assisting law enforcement and acting at their direction will review that information to locate the items described in Section III of the Attachment B.  Attachments A and B are incorporated herein by reference.

3.    As described more fully below, I submit that there is probable cause to believe the information associated with the **Subject Account** constitutes evidence of criminal violations of 21 United States Code Sections 841(a)(1) and 846 (Conspiracy to Distribute Methamphetamine); as further described in Attachment B.

4.    The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation,

---

[2] The first letter of the **Subject Account** is a lowercase "L".

1

including other law enforcement officers; interviews of subjects and witnesses; my review of documents and computer records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. All dates, times, and amounts discussed herein are approximate.

## EXPERIENCE AND TRAINING

5.     I have been employed as a Special Agent with Homeland Security Investigations ("HSI") since January 2024. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia, and have completed 900 hours of training as part of the Criminal Investigator Training Program and HSI Special Agent Training Programs at the FLETC. As a result of my training and experience as a Special Agent, I am familiar with federal criminal laws relating to Controlled Substance violations. As part of my training, I have completed course studies in, among other things, criminal law, constitutional law, search and seizures, courtroom procedure, evidence processing, drug smuggling, and other drug-related offenses.

6.     Prior to my employment with HSI, I was employed by the San Diego County Sheriff's Department for over 13 years. During that time, I worked as a deputy, corporal, detective, and sergeant. I investigated crimes of violence, narcotics related offenses, gang-related offenses, and cases involving allegations of staff misconduct. I participated in numerous arrests and executed numerous search warrants, including search warrants for the type of evidence that is the subject of this application. Additionally, I hold a Bachelor of Science degree in Criminal Justice from California Coast University.

7.     During my tenure with HSI, I have participated in the investigation of various

narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

8.    My knowledge of the matters contained in this affidavit is based upon my personal knowledge, digital device media, and information provided to me by other law enforcement officers/agents.   All dates and times unless noted otherwise are in Pacific Time.

## **BACKGROUND INFORMATION ON GOOGLE**[3]

9.    Google is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google Maps, and a free traffic tracking service called Waze. Many of these free services offer additional functionality if the user signs into their Google Account.

10.    In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account

---

[3] The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages:  the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; or product pages on about.google.com.

when they first turn on the device, and a Google Account is required for certain functionalities on these devices.

11.    Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the log-in username for access to the Google Account.

12.    Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after the description of services below.

13.    Google provides email services (called Gmail) to Google Accounts through email addresses at gmail.com or enterprise email addresses hosted by Google. Gmail can be accessed through a web browser or a mobile application. Additional email addresses ("recovery," "secondary," "forwarding," or "alternate" email addresses) can be associated with the Google Account by the user. Google preserves emails associated with a Google Account indefinitely, unless the user deletes them.

14.    Google provides an address book for Google Accounts through Google Contacts. Google Contacts stores contacts the user affirmatively adds to the address book, as well as contacts the user has interacted with in Google products. Google Contacts can store up to 25,000 contacts. Users can send messages to more than one contact at a time by manually creating a group within Google Contacts or communicate with an email distribution list called a Google Group. Users have the option to sync their Android mobile phone or device address book with their account so it is stored in Google Contacts. Google preserves contacts indefinitely, unless the user deletes them. Contacts can be accessed from the same browser window as other Google products like Gmail and Calendar.

15.    Google provides an appointment book for Google Accounts through Google Calendar, which can be accessed through a browser or mobile application. Users can create events or RSVP to events created by others in Google Calendar. Google Calendar can be

4

set to generate reminder emails or alarms about events or tasks, repeat events at specified intervals, track RSVPs, and auto-schedule appointments to complete periodic goals (like running three times a week). A single Google Account can set up multiple calendars. An entire calendar can be shared with other Google Accounts by the user or made public so anyone can access it. Users have the option to sync their mobile phone or device calendar so it is stored in Google Calendar. Google preserves appointments indefinitely, unless the user deletes them. Calendar can be accessed from the same browser window as other Google products like Gmail and Calendar.

16.    Google provides several messaging services including Duo, Messages, Hangouts, Meet, and Chat. These services enable real-time text, voice, and/or video communications through browsers and mobile applications, and also allow users to send and receive text messages, videos, photos, locations, links, and contacts. Google may retain a user's messages if the user hasn't disabled that feature or deleted the messages, though other factors may also impact retention.  Google does not retain Duo voice calls, though it may retain video or voicemail messages.

17.    Google Drive is a cloud storage service automatically created for each Google Account. Users can store an unlimited number of documents created by Google productivity applications like Google Docs (Google's word processor), Google Sheets (Google's spreadsheet program), Google Forms (Google's web form service), and Google Slides, (Google's presentation program). Users can also upload files to Google Drive, including photos, videos, PDFs, and text documents, until they hit the storage limit. Users can set up their personal computer or mobile phone to automatically back up files to their Google Drive Account. Each user gets 15 gigabytes of space for free on servers controlled by Google and may purchase more through a subscription plan called Google One.  In addition, Google Drive allows users to share their stored files and documents with up to 100 people and grant those with access the ability to edit or comment. Google maintains a record of who made changes when to documents edited in Google productivity applications. Documents shared with a user are saved in their Google Drive in a folder

called "Shared with me." Google preserves files stored in Google Drive indefinitely, unless the user deletes them. Further, Android device users can also use Google Drive to backup certain data from their device. Android backups on Google Drive may include mobile application data, device settings, file downloads, and SMS messages. If a user subscribes to Google's cloud storage service, Google One, they can opt to backup all the data from their device to Google Drive.

18.     Google Keep is a cloud-based notetaking service that lets users take notes and share them with other Google users to view, edit, or comment. Google Keep notes are stored indefinitely, unless the user deletes them.

19.     Google offers a cloud-based photo and video storage service called Google Photos. Users can share or receive photos and videos with others. Google Photos can be trained to recognize individuals, places, and objects in photos and videos and automatically tag them for easy retrieval via a search bar. Users have the option to sync their mobile phone or device photos to Google Photos. Google preserves files stored in Google Photos indefinitely, unless the user deletes them.

20.     Google offers a map service called Google Maps which can be searched for addresses or points of interest. Google Maps can provide users with turn-by-turn directions from one location to another using a range of transportation options (driving, biking, walking, etc.) and real-time traffic updates. Users can share their real-time location with others through Google Maps by using the Location Sharing feature. And users can find and plan an itinerary using Google Trips. A Google Account is not required to use Google Maps, but if users log into their Google Account while using Google Maps, they can save locations to their account, keep a history of their Google Maps searches, and create personalized maps using Google My Maps. Google stores Maps data indefinitely, unless the user deletes it.

21.     Google collects and retains data about the location at which Google Account services are accessed from any mobile device, as well as the periodic location of Android devices while they are in use. This location data can derive from a range of sources,

including GPS data, Wi-Fi access points, cell-site locations, geolocation of IP addresses, sensor data, user searches, and Bluetooth beacons within range of the device. According to Google, this location data may be associated with the Google Account signed-in or registered to the device when Location Services are activated on the device and the user has enabled certain global settings for their Google Account, such as Location History or Web & App Activity tracking.  The data retained may be both precision location data, like latitude and longitude coordinates derived from GPS, and inferential location data, such as the inference that a Google Account is in New York because it conducts a series of searches about places to eat in New York and directions from one New York location to another. Precision location data is typically stored by Google in an account's Location History and is assigned a latitude-longitude coordinate with a meter radius margin of error. Inferential data is stored with an account's Web & App Activity. Google maintains these records indefinitely for accounts created before June 2020, unless the user deletes it or opts to automatically delete their Location History and Web & App Activity after three or eighteen months. Accounts created after June 2020 auto-delete Location History after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or auto-deletion at three months.

22.    A subsidiary of Google, Google Payment Corporation, provides Google Accounts an online payment service called Google Pay (previously Google Wallet), which stores credit cards, bank accounts, and gift cards for users and allows them to send or receive payments for both online and brick-and-mortar purchases, including any purchases of Google services. Users may delete some data associated with Google Pay transactions from their profile, but Google Payment Corporation retains some records for regulatory purposes.

23.    Google offers a free web browser service called Google Chrome which facilitates access to the Internet. Chrome retains a record of a user's browsing history and allows users to save favorite sites as bookmarks for easy access. If a user is logged into their Google Account on Chrome and has the appropriate settings enabled, their browsing

history, bookmarks, and other browser settings may be saved to their Google Account in a record called My Activity.

24.    Google Accounts can buy electronic media, like books, movies, and music, and mobile applications from the Google Play Store. Google Play records can include records of whether a particular application has been or is currently installed on a device. Users cannot delete records of Google Play transactions without deleting their entire Google Account.

25.    Google offers a service called Google Voice through which a Google Account can be assigned a telephone number that can be used to make, record, and forward phone calls and send, receive, store, and forward SMS and MMS messages from a web browser, mobile phone, or landline. Google Voice also includes a voicemail service. Records are stored indefinitely, unless the user deletes them.

## STATEMENT OF PROBABLE CAUSE

### *First Defendant is Arrested for Importing Methamphetamine*

26.    On September 24, 2024, Deborah Ann Camacho was arrested at the Tecate California Port of Entry ("Tecate POE") driving a black 2013 Chevrolet Silverado (the "Silverado") containing 215 packages of methamphetamine weighing approximately 106.94 kilograms. *See U.S. v. Deborah Ann Camacho*, 24-cr-2138-JO. The methamphetamine was found throughout the Silverado, including the tailgate, all doors, the spare tire, dashboard, center console, rear cab wall, front fender, firewall, roof, and gas tank.

27.    During the investigation of Camacho, agents ran the Silverado's California license plate through a private, third-party license plate reader ("LPR").[4] The LPR revealed that the Silverado was parked near a residence, located at 14671 Hermosa Road, Adelanto, California 92301 ("the Target Residence"), on several occasions. Agents also pulled the crossing records of the Silverado and compared the crossing records to the dates the

---

[4] The license plate reader is owned by Motorola Solutions, Inc.

Silverado was seen near the Target Residence. Of note, the Silverado was observed at the Target Residence on June 17, 2024 (the day after the Silverado crossed from Mexico into the United States on June 16, 2024), and September 6, 2024 (the day after the Silverado crossed from Mexico into the United States on September 5, 2024).

28.    As agents continued to investigate the Target Residence, agents identified a gray 2007 Chevrolet Avalanche (the "Avalanche") parked near the Target Residence that had not previously been observed at the Target Residence. Agents reviewed the crossing records of the Avalanche and found that the Avalanche had recently crossed from Mexico into the United States through the Tecate POE.   Based on this information, agents placed an alert on the Avalanche.

### *Second Defendant is Arrested for Importing Methamphetamine*

29.    On October 24, 2024, Shaun Richard Anderson was arrested at the Tecate POE driving the Avalanche. *See U.S. v. Shaun Richard Anderson*, 24-cr-2456-JLS. The Avalanche contained 206 packages of methamphetamine weighing approximately 102.66 kilograms. Like the Silverado, the packages were found throughout the Avalanche.

30.    Based on the seizure of narcotics from two vehicles previously observed at the Target Residence, agents believed that the Target Residence was being used as a stash house for narcotics that had been transported across the border from Mexico into the United States.

31.    Agents continued to review LPR images near the Target Residence and identified a blue Subaru Crosstrek (the "Crosstrek") registered to the renter of record near the Target Residence. Agents pulled the Crosstrek's crossing records and found that the Crosstrek had recently crossed from Mexico into the United States through the Tecate POE. Agents also found that the Crosstrek was driven through the Tecate POE by someone not associated with the Target Residence. Based on this information, agents placed an alert on the Crosstrek.

1

*Third Defendant is Arrested for Importing Methamphetamine*

2      32.    On November 6, 2024, Leydi Anais Gonzalez was arrested at the Tecate POE

3  driving the Crosstrek. *See U.S. v. Leydi Anais Gonzalez*, 24-cr-2586-BAS.  The Crosstrek

4  contained 94 packages of methamphetamine weighing approximately 46.68 kilograms.

5  Like the Silverado and the Avalanche, the packages were found throughout the Crosstrek.

6      33.    Following Gonzalez's arrest, agents put up a pole camera on December 12,

7  2024, to conduct surveillance of the Target Residence.

8      *Agents Identify Another Load Vehicle Connected to the Target Residence*

9      34.    While conducting surveillance of the Target Residence, agents observed a

10  black 2020 Hyundai Santa Fe (the "Santa Fe") arrive to the Target Residence on December

11  15, 2024, and December 28, 2024. On both occasions, agents observed as the Santa Fe

12  arrived at the Target Residence, entered the garage, remained in the garage for several

13  hours, and departed the Target Residence.

14      35.    Agents pulled the crossing records of the Santa Fe and determined that the

15  Santa Fe had crossed from Mexico into the United States through the Otay Mesa California

16  Port of Entry ("Otay Mesa POE") on both December 15, 2024, and December 28, 2024

17  (the same days it was observed at the Target Residence). Agents also found that the Santa

18  Fe was driven by two different people—one person on December 15, 2024, and another

19  person on December 28, 2024. Based on this information, agents placed a TECS alert on

20  the Santa Fe.

21

22      *Agents Execute a Search Warrant at the Target Residence and Find
          Methamphetamine*

23

24      36.    As agents continued to investigate the Target Residence, on January 24, 2025,

25  agents obtained a warrant to search the Target Residence from the Superior Court of

26  California, County of San Bernardino.

27      37.    The following day, January 25, 2025, agents received an alert that the Santa

28  Fe had applied for entry from Mexico into the United States at the Otay Mesa POE.

Approximately three hours later, agents, conducting physical surveillance at the Target Residence, observed the Santa Fe pull into the garage of the Target Residence. The driver of the Santa Fe was subsequently identified as LOMELI.

38.     Agents continued surveilling the Target Residence, and at approximately 4:22 p.m., agents observed the garage of the Target Residence open, and an individual, later identified as Luis Anthony Salinas, was seen standing next to the Santa Fe. After the garage opened, LOMELI was observed exiting the garage and heading toward a maroon Chevrolet S10 (the "Chevy") that was parked in the driveway of the Target Residence. Agents observed as LOMELI entered the Chevy and attempted to back out of the driveway. Agents immediately proceeded to the Target Residence and stopped the Chevy in the driveway. At 4:25 p.m., agents executed the search warrant at the Target Residence.

39.     Pursuant to the search warrant, agents searched the Target Residence, garage, and the Santa Fe. During their search of the Santa Fe, agents discovered three trash bags in the trunk compartment of the Santa Fe. A search of these trash bags revealed 98 packages, with a total approximate weight of 46.03 kgs (101.50 pounds). Based on the agents' training and experience, they identified the white crystalline substance as appearing to have the characteristics of methamphetamine. The white crystalline substance was subsequently field-tested and determined to contain methamphetamine.

40.     LOMELI and Salinas were placed under arrest at approximately 5:00 p.m. *See United States v. Roberto Lomeli Saavedra (1) and Luis Anthony Salinas (2)*, 3:25-cr-1996-WQH.

### *Location of the Target Device and Post-Miranda Statement*

41.     LOMELI's cellular telephone was found and seized by a law enforcement officer tasked to perform a search of the Target Residence. LOMELI's cellular telephone was located inside the garage of the Target Residence, directly next to the Santa Fe. During an in-custody interview, LOMELI was shown the cellular telephone and identified the Target Device as his.

11

42.     During a post-*Miranda* interview, LOMELI initially claimed that the Santa Fe belonged to someone he knew, and that he was going to repair the Santa Fe. Ultimately, however, LOMELI admitted to having dismantled the Santa Fe that he understood to be loaded with drugs, removing the drugs, placing the drugs in the garbage bags, and then placing the bags in the trunk of the Santa Fe. He further admitted to having done this on multiple occasions for the prior six or seven months. LOMELI explained that, on those occasions, when he finishes removing the drugs from a vehicle, he drives the Santa Fe (or other load vehicle) to a location where an individual would take the load vehicle from him. LOMELI claimed that he was paid $300 for each vehicle he unloaded.

### Search Warrant Issued for LOMELI's Cellular Telephone

43.     On February 19, 2025, the Honorable Michelle M. Pettit, United States Magistrate Judge for the Southern District of California, issued a search warrant for LOMELI's cellular telephone.

### Identification of the Subject Account

44.     Pursuant to the search warrant, agents were successful in extracting some data from LOMELI's cellular telephone. Based on a review of the limited information agents could extract from LOMELI's cellular telephone, agents found that on January 25, 2025, (the date of LOMELI's arrest), LOMELI's cellular telephone experienced a "Power Event" showing a "Reset" occurred the same day. Based on my experience and training, a "Power Event" showing a "Reset" indicates that LOMELI's cellular telephone was powered off and/or reset on the day of his arrest.

45.     Further, based on my training and experience, "Power Events," including the "Reset" which occurred on LOMELI's cellular telephone, tend to limit or significantly reduce the available information that can be forensically downloaded from a cellular telephone.

46.     Despite the limited information downloaded from LOMELI's cellular telephone, agents identified a Google Drive account, the **Subject Account**, that was registered to LOMELI's cellular telephone.

47.    Based upon my training, experience, consultation with other law enforcement officers experienced in drug trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that cellular telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Subject Account** linked to LOMELI's cellular telephone. In light of the above facts, there is probable cause to believe that LOMELI was using the **Subject Account** linked to LOMELI's cellular telephone to communicate with others to coordinate and plan the distribution of Controlled Substances in the days and weeks prior to January 25, 2025.

### *Temporal Scope of Google Search Warrant*

48.    Given the arrest of LOMELI occurred on January 25, 2025, and the first arrest relating to the investigation of the conspiracy to import and distribute methamphetamine occurred on September 24, 2024 (the date Camacho was arrested), I am requesting account data for the **Subject Account** for data beginning on **September 24, 2024** (the date of Camacho's arrest), up to and including **January 25, 2025** (the date of LOMELI's arrest).

## PRIOR ATTEMPTS

49.    As previously mentioned, the United States attempted a forensic download of LOMELI's cellular telephone pursuant to a search warrant issued by the Honorable Michelle M. Pettit on February 19, 2025. Although there was an attempt to forensically download LOMELI's cellular telephone, there have been no prior attempts to search the **Subject Account**.

## PROCEDURES FOR ELECTRONICALLY STORED INFORMATION

50.    Federal agents and investigative support personnel are trained and experienced in identifying communications relevant to the crimes under investigation. Google's personnel are not. It would be inappropriate and impractical for federal agents to search the Google's vast computer network for the relevant accounts and then to analyze the contents of those accounts on Google's premises. The impact on Google's business would be disruptive and severe.

51.     Therefore, I request authority to seize all content, including electronic mail and attachments, stored messages, historical location information, web browsing history, photographs, notes, chats, SSH, Telnet, and FTP logs, web pages, software code, databases, websites, web pages, and any other data or content from Google's account associated with the **Subject Account**, as described in the corresponding Attachment B. In order to accomplish the objective of the search warrant with a minimum of interference with Google's business activities, to protect the privacy of Google's subscribers whose accounts are not authorized to be searched, and to effectively pursue this investigation, HSI seeks authorization to allow Google to make digital copies of the entire contents of the **Subject Account** subject to seizure.  That copy will be provided to me or to any authorized federal agent.  The copy will be imaged and the image will then be analyzed to identify communications and other electronic records subject to seizure pursuant to the corresponding Attachment B.  Relevant electronic records will be copied to separate media. The original media will be sealed and maintained to establish authenticity, if necessary.

52.     Analyzing the data to be provided by Google may require special technical skills, equipment, and software.  It may also be very time-consuming.  Searching by keywords, for example, often yields many thousands of "hits" each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant.  Merely finding a relevant "hit" does not end the review process.  Keyword searches do not capture misspelled words, reveal the use of coded language, or account for slang.  Keyword searches are further limited when electronic records are in or use foreign languages or, like in Chinese, foreign alphabets.  Certain file formats also do not lend themselves to keyword searches.  Keywords search text.  Many common electronic mail, database, and spreadsheet applications, which files may have been attached to electronic mail, do not store data as searchable text.  Instead, such data is saved in a proprietary non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases dramatically. Google does not always organize the electronic files they provide chronologically, which makes review even more

time consuming and may also require the examiner to review each page or record for responsive material.

53.    Based on the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months. Keyword searches need to be modified continuously based upon the results obtained and, depending on the organization, format, language, and alphabet of the records provided by Google, examiners may need to review each record to determine if it is responsive to the corresponding Attachment B. The personnel conducting the examination will complete the analysis within **90 days** of receipt of the data from Google, absent further application to this court.

54.    Based upon my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize all electronic mails and web hosting content that identify any users of the **Subject Account** and any electronic mails or communications sent or received in temporal proximity to incriminating electronic mails or communications that provide context to the incriminating mails or communications.

55.    All forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

## **CONCLUSION**

56.    Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Subject Account** will yield evidence of Defendants' violations of Title 21, United States Code, Sections 841and 846, distribution of Controlled Substances and conspiracy to commit the same; and Title 21 U.S.C. Sections 952, 960, and 963, importation of controlled substances and conspiracy to commit the same. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

1   I swear the foregoing is true and correct to the best of my knowledge and belief.

2

3

4                                _____

                                   Special Agent Alexander Doyle

5                                   Homeland Security Investigations

6

7   Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1

8   by telephone on this 9th day of October, 2025.

9

10                                _____

11                               HONORABLE STEVE B. CHU

                               UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

j.      All maps data associated with the account, including Google Maps and Google Trips, including: all saved, starred, and privately labeled locations; search history; routes begun; routes completed; mode of transit used for directions; My Maps data; accounts and identifiers receiving or sending Location Sharing information to the account; changes and edits to public places; and all associated logs, including IP addresses, location data, and timestamps, and change history;

k.      All Location History and Web & App Activity indicating the location between **September 24, 2024, to January 25, 2025** at which the account was active, including the source of the data, date and time, latitude and longitude, estimated accuracy, device and platform, inferences drawn from sensor data (such as whether a user was at rest, walking, biking, or in a car), and associated logs and user settings, including Timeline access logs and change and deletion history;

l.      All payment and transaction data associated with the account, such as Google Pay and Google Wallet, including: records of purchases, money transfers, and all other transactions; address books; stored credit; gift and loyalty cards; associated payment cards, including any credit card or bank account number, PIN, associated bank, and other numbers; and all associated access and transaction logs, including IP address, time stamp, location data, and change history;

m.      All Internet search and browsing history, and application usage history, including Web & App Activity, Voice & Audio History, Google Assistant, and Google Home, including: search queries and clicks, including transcribed or recorded voice queries and Google Assistant responses; browsing history, including application usage; bookmarks; passwords; autofill information; alerts, subscriptions, and other automated searches, including associated

notifications and creation dates; user settings; and all associated logs and change history;

n.   All activity relating to Google Play, including: downloaded, installed, purchased, used, and deleted applications; details of the associated device and Android ID for each application, medium, or file; payment transactions; user settings; and all associated logs, including IP addresses, timestamps, and change history;

o.   All Google Voice records associated with the account, including: forwarding and other associated telephone numbers, connection records; call detail records; SMS and MMS messages, including draft and deleted messages; voicemails, including deleted voicemails; user settings; and all associated logs, including access logs, IP addresses, location data, timestamps, and change history.

## III.   Evidence to be Seized by the Government

The search of the data supplied by the ISP pursuant to this warrant will be conducted by Homeland Security Investigations as provided in the "Procedures For Electronically Stored Information" of the affidavit submitted in support of this search warrant and will be limited to the period of **September 24, 2024 to January 25, 2025**, for location data and all other content, and the seizure of communications in any form, writings, images, records, videos, attachments, location data, or photographs:

a)   Tending to discuss or establish a conspiracy to distribute methamphetamine in violation violations of 21 United States Code Sections 841(a)(1) and 846;

b)   Tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of

22

this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, HSI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

All of the above constituting evidence of a violation of 21 United States Code Sections 841(a)(1) and 846.